# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

Richard Michael Waters and
Robin Louise Waters,

                           Debtors.

C/A No. 19-05230-JW

Chapter 13

**ORDER**

This matter comes before the Court for a review of the disclosure regarding attorney compensation and the reasonableness and sharing of compensation paid to David Breen and the Breen Law Firm (collectively, "David Breen"), counsel for Richard Michael Waters and Robin Louise Waters (collectively, the "Debtors"), and Matthew Breen and Lowcountry Law LLC (collectively, "Matthew Breen"), who also represented Robin Louise Waters ("Debtor-Plaintiff"), in connection with the following four adversary proceedings related to the above captioned bankruptcy case: *Waters v. Beach Anesthesia, LLC,* Adv. Pro. No. 19-80085 ("the Beach Anesthesia Adversary"); *Waters v. Carolina Regional Surgery Center, Ltd.,* Adv. Pro. No. 19-80089 ("the 1st Carolina Regional Adversary"); *Waters v. Carolina Regional Surgery Center, Ltd.,* Adv. Pro. No. 19-80103 (together with the 1st Carolina Regional Adversary, "the Carolina Regional Adversaries," and separately, the "2nd Carolina Regional Adversary"); *Waters v. McLeod Loris Seacoast Hosp.,* Adv. Pro. No. 19-80090 ("the McLeod Adversary") (collectively, "the Adversary Proceedings"). The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## **INTRODUCTION**

The Court selected these Adversary Proceedings for review following the entry of an order

in another case and its related adversary proceedings filed by David Breen and Matthew Breen, *In*

*re Defeo,* which identified certain compensation disclosure violations by David Breen and

Matthew Breen, as attorneys for the debtor and "debt relief agencies," under 11 U.S.C.      §§ 329,

526, 527 and 528 and Fed. R. Bankr. P. 2016 and 2017, and required them to "self-report all

adversary proceedings in which they serve or have served as co-counsel under agreements similar

to those in these proceedings within the last three years and provide the relevant fee disclosures

and agreements if not otherwise filed in the applicable cases." *In re Defeo,* C/A No. 20-03738, slip

op. (Bankr. D.S.C. March 25, 2021) ("March 25, 2021 Order").[1]  Thereafter, the Court expanded

its review of the disclosures and compensation in this case and others that David Breen and

Matthew Breen self-reported as required by the Court's order.[2]  Of those adversary proceedings

reported by David Breen and Matthew Breen in response to the March 25, 2021 Order, eleven

were identified by the Court as possibly having similar compensation disclosure issues. Pursuant

to § 329 of the Bankruptcy Code, the Court, acting *sua sponte,* also requested the billing records

for those adversary proceedings reported by David Breen and Matthew Breen.  As a result of this

review, the Court observed a pattern of practice by David Breen and Matthew Breen of bringing

frequent adversary proceedings alleging minor creditor communications as violations of the

automatic stay.  These creditor communications were often received by debtors early after case

---

[1]      In the March 25, 2021 Order, the Court held that David Breen's and Matthew Breen's representation of
debtors in adversary proceedings alleging willful violation of the stay were services rendered "in connection with"
the bankruptcy cases and therefore subject to review under 11 U.S.C. § 329.  The order further noted that certain
disclosures of compensation as required by § 329(a) and Fed. R. Bankr. P. 2016 and 2017 were not properly or
timely filed.
[2]      The Court elected to focus its review on proceedings filed within 3 years of the inquiry, 2018-2021, as a
measured response to these concerns.

2

filing and appear to be motivated to a great degree towards generating attorney's fees for debtor's

counsel. Similar strategies and patterns of practice have been criticized by courts in other districts

as creating a "cottage industry" by the debtors' bar to collect fees.[3]

Following a review of those records, the Court entered an order on June 11, 2021, requiring

David Breen and Matthew Breen to appear at a hearing on June 29, 2021, to address the Court's

detailed concerns regarding the reasonableness of the compensation paid to David Breen and

Matthew Breen and their disclosures regarding attorney compensation.  During the hearing on June

29, 2021, which was conducted in person, David Breen and Matthew Breen had the opportunity

to present additional evidence and argument supporting the reasonableness of the fees that they

received related to the Adversary Proceedings and to address their disclosure of compensation

issues. At this time, the Court has elected to address the four Adversary Proceedings related to *In

re Waters* and has suspended further review of compensation and disclosure in the remaining seven

adversary proceedings.[4]

---

[3]      Beginning in 2000 and thereafter, David Breen established a practice of filing adversary complaints based
on the post-petition transmission of one or two collection letters or bills by creditors.  Court records demonstrate that
David Breen has filed 102 such adversary proceedings with the vast majority being filed before asking the defendants
to cease collection efforts.  These adversary proceedings appear to be primarily based on allegations of emotional
distress damages without discovery demonstrating doctor visits, medical bills, or physical manifestations of harm.
The largest component of damages were attorneys' fees and costs incurred before entry of any scheduling order,
discovery, or motion.  The vast majority of these cases (over 95%) were settled with a payment to debtors and dismissal
of the litigation pursuant to Rule 7041 without disclosure or review of any compensation paid to debtors' counsel. The
settlement proceeds were paid to debtor through counsel who met with the debtor and decided what portion counsel
retained as fees, which was often as much as 80%.
          In addition, although David Breen filed many bankruptcy cases during this period, the adversary proceedings
were often filed in clusters—i.e., several filings of adversary proceedings in the same bankruptcy case—while none
were filed in most of the bankruptcy cases.  Very few of these adversary proceedings included allegations of any
vulnerability or condition that made suing the defendant in a particular proceeding different from the other debtors
represented by David Breen and Matthew Breen. It is reasonable to infer that the vast majority of the non-suing debtors
may have also received similar letters, bills, or calls.
          Finally, it appears that over time the causes of action by number and nature and the amounts alleged as
damages, including the assertion of inflammatory allegations, appeared intended or at least likely to present the
impression of greater litigation risk to the defendants, which often appeared to result in increased amounts of
settlements demanded and attorneys' fees paid to counsel. *See Anderson v. Fed. Deposit Ins. Corp.,* 918 F.2d 1139,
1141 n.1 (4th Cir. 1990) (stating that the court may "properly take judicial notice of its own records").

[4]      The review of these other adversary proceedings is subject to being later reopened on the request by a
party-in-interest or in the Court's discretion.

Based on the arguments and evidence presented and the Court's records, the Court makes the following findings of fact and conclusions of law.[5]

## **FINDINGS OF FACT**

1.      On October 4, 2019, Debtors, with the assistance of David Breen, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Along with the petition, David Breen filed a Disclosure of Compensation, in which he indicated that he agreed to accept $3,700[6] for services in connection with the bankruptcy case.  The Disclosure provided that in return for the $3,700 fee, he had "agreed to render legal service for all aspects of the bankruptcy case, including:… [r]epresentation of the debtor[s] in adversary proceedings and other contested bankruptcy matters." The Disclosure of Compensation filed with the petition appears to be based on a representation agreement between David Breen and the Debtors dated months earlier on May 30, 2019, an agreement produced by David Breen in connection with an Amended Compensation Disclosure statement filed on March 29, 2021.

2.      The Disclosure of Compensation (B2030) form and the May 30, 2019 representation agreement were, however, inconsistent because unlike the Disclosure of Compensation, the agreement expressly states that the $3,700 fee "*does not include or provide* for any work after the Plan is confirmed including…the prosecution or defense of any adversary action…."[7]

---

[5]      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

[6]      This amount equals the expedited no look fee approved by the Court at that time for representation in Chapter 13 cases.

[7]      Of the four Adversary Proceedings under review, only the 2nd Carolina Regional Adversary was commenced after confirmation of the Debtors' Chapter 13 Plan on December 9, 2019.

<u>Beach Anesthesia Adversary</u>

3.     On October 28, 2019, on behalf of the Debtor, Robin Louise Waters ("Debtor-Plaintiff"), David Breen and Matthew Breen commenced the Beach Anesthesia Adversary by filing a Complaint against Beach Anesthesia, LLC ("Beach Anesthesia") seeking actual and punitive damages in the amount of $50,000 for a willful violation of the automatic stay under 11 U.S.C. § 362(k).[8]  The willful violation of stay was based upon allegations that Newby, Sartip & Masel, LLC, on Beach Anesthesia's behalf, mailed a single collection letter seeking $496.64 that was received by Debtor-Plaintiff after she filed her bankruptcy case.

4.     In addition to the § 362(k) claim, David Breen and Matthew Breen also alleged claims for negligence and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA") centered upon the same allegations giving rise to the willful violation of stay claim.

5.     Three days before commencement of the Beach Anesthesia Adversary, Debtor-Plaintiff executed a separate representation agreement with David Breen.  Under that agreement, Debtor-Plaintiff agreed to retain David Breen's services and to pay him "and any other attorney he deems in his sole discretion necessary to work on the case and matter" at the hourly rate of $400 per hour[9] for work performed in the Beach Anesthesia Adversary from October 24, 2019, until the file closed.  According to the representation agreement, Debtor-Plaintiff was obligated to pay the hourly rate regardless of the outcome or result of the lawsuit.

6.     David Breen failed to timely file a document disclosing the new representation agreement with the Court as required by § 329 and Rule 2016(b).

---

[8]     The $50,000 demand was stated in the caption of the Complaint and was not included in the prayer for relief.

[9]     Although David Breen's representation agreement for the Beach Anesthesia Adversary provided an hourly rate for his services of $400 per hour, he charged an hourly rate of $350 per hour for his services in the billing statement.   Matthew Breen billed at the rate of $250 per hour.

7.      Matthew Breen did not enter into any written compensation agreement with the Debtor-Plaintiff for his services in the Beach Anesthesia Adversary.

8.      As required by chambers for payments made in actions dismissed under Fed. R. Bankr. P. 7041,[10] David Breen reported by email sent to chambers on November 8, 2019, which was just eleven days after the filing of the Complaint in the Beach Anesthesia Adversary, that Beach Anesthesia agreed to pay $2,000 to the Debtor-Plaintiff "for her damages and attorney fees."

9.      Neither David Breen nor Matthew Breen disclosed how much of the settlement they retained as compensation for their services as required by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.

10.      Later that day, David Breen also filed a Notice of Stipulated Dismissal, signed by David Breen only, providing that the Beach Anesthesia Adversary had been resolved and was now moot. Prior to the dismissal, no certificate of service was filed, no motions were filed, no discovery was conducted, and no hearings were held in the matter.

## The Carolina Regional Adversaries

11.      On November 4, 2019, David Breen and Matthew Breen commenced the 1st Carolina Regional Adversary on behalf of the Debtor-Plaintiff by filing a Complaint against Carolina Regional Surgery Center, Ltd. ("Carolina Regional") seeking actual and punitive damages in the amount of $50,000 for a willful violation of the automatic stay under § 362(k).[11] The willful violation of stay claim was based upon allegations that Carolina Regional mailed a single collection letter to the Debtor-Plaintiff seeking $330.00 after she filed her bankruptcy case.

---

[10]      The chambers requirement to report the settlement amounts paid by defendants is in place to allow the Court to determine whether there is a pattern of creditor violations or abuse and not for the purpose of examining fees.

[11]      The $50,000 demand was stated in the caption of the Complaint and was not included in the prayer for relief.

12.     In addition to the § 362(k) claim, David Breen and Matthew Breen also alleged claims for negligence and violation of the SCUTPA centered upon the same allegations giving rise to the willful violation of stay claim.

13.     On the same day as commencement of the 1st Carolina Regional Adversary, Debtor-Plaintiff executed a separate representation agreement with David Breen. Under the agreement, Debtor-Plaintiff agreed to retain David Breen's services and to pay him "and any other attorney he deems in his sole discretion necessary to work on the case and matter" at the hourly rate of $350 per hour for work performed in the Adversary from November 1, 2019, until the file closed.  According to the representation agreement, Debtor-Plaintiff was obligated to pay the hourly rate regardless of the outcome or result of the lawsuit.

14.     David Breen failed to timely file a document disclosing the new representation agreement with the Court as required by § 329 and Rule 2016(b).

15.     Matthew Breen failed to obtain any written compensation agreement with the Debtor-Plaintiff for his services in the 1st Carolina Regional Adversary.

16.     On November 7, 2019, David Breen served the Complaint on Carolina Regional and filed a Certificate of Service.

17.     On December 26, 2019, David Breen filed a motion for judgment in the 1st Carolina Regional Adversary to secure a default judgment for actual damages, attorney's fees, and punitive damages for the alleged post-petition transmission of a single collection letter.  He also filed a separate Complaint in the 2nd Carolina Regional Adversary.

18.     In this 2nd Complaint, David Breen sought $75,000 for a willful violation of the automatic stay under 11 U.S.C. § 362(k).[12]  The willful violation of stay claim was based upon

---

[12]     The $75,000 demand was stated in the caption of the Complaint and was not included in the prayer for relief.

7

allegations that Carolina Regional mailed two more collection letters to the Debtor-Plaintiff seeking $330.00 after the 1st Carolina Regional Adversary was filed.

19.     In addition to the § 362(k) claim, David Breen again alleged claims for negligence and violation of the SCUTPA centered upon the same allegations giving rise to the willful violation of stay claim.

20.     On December 27, 2019, David Breen served the Complaint on Carolina Regional and filed a Certificate of Service.

21.     On January 8, 2020, as required by chambers for payments made in actions dismissed under Fed. R. Bankr. P. 7041, David Breen reported settlement of both Carolina Regional Adversaries by email to chambers and advised that Carolina Regional agreed to pay $7,500 to the Debtor-Plaintiff "as a global settlement for both actions which were stay violation cases."

22.     Neither David Breen nor Matthew Breen timely disclosed how much of the settlement they retained as compensation for their services as required by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure.[13]

23.     Also on January 8, 2020, David Breen filed a Notice of Stipulated Dismissal in the Carolina Regional Adversaries, signed by David Breen only, providing that the Adversaries had been resolved and were now moot.  Prior to the dismissal, no discovery was conducted, and no hearings were held in either of the adversary proceedings.  The only motion filed was the Motion

---

[13]      Although no documents appear to have been filed by Matthew Breen in the 2nd Carolina Regional Adversary, the Amended Disclosure filed by Matthew Breen on March 29, 2021, indicated that he received compensation of $3,000 for his services in both Carolina Regional Adversaries.  The billing records indicate that he billed at the rate of $250 per hour.

for Judgment filed in the 1st Carolina Regional Adversary, which was not scheduled for a hearing before the Adversary Proceeding was dismissed.

McLeod Adversary

24.     On November 4, 2019, David Breen and Matthew Breen also commenced the McLeod Adversary by filing a Complaint against McLeod Loris Seacoast Hospital ("McLeod Hospital") seeking actual and punitive damages in the amount of $50,000 for a willful violation of the automatic stay under 11 U.S.C. § 362(k).[14]  The willful violation of stay claim was based upon allegations that McLeod Hospital mailed a single collection letter to the Debtor-Plaintiff seeking $6,065.00 after she filed her bankruptcy case.

25.     In addition to the § 362(k) claim, David Breen and Matthew Breen also alleged claims for negligence and violation of the SCUTPA centered upon the same allegations giving rise to the willful violation of stay claim.

26.     On the same day that she signed the representation agreement for the Carolina Regional Adversaries, Debtor-Plaintiff executed a separate representation agreement with David Breen, which provided her agreement to retain David Breen's services and to pay him "and any other attorney he deems in his sole discretion necessary to work on the case and matter" at the hourly rate of $350 per hour[15] for work performed in the McLeod Adversary Proceeding from November 1, 2019, until the file closed.  According to the representation agreement, Debtor-Plaintiff was obligated to pay the hourly rate regardless of the outcome or result of the lawsuit.

---

[14]     The $50,000 demand was stated in the caption of the Complaint and was not included in the prayer for relief.

[15]     Although the representation agreement states that additional counsel could also bill at $350 per hour, Matthew Breen only billed at the rate of $250 per hour.

27. David Breen failed to timely file a document disclosing this new fee agreement with the Court as required by § 329 and Rule 2016(b).

28. Matthew Breen did not enter any written compensation agreement with the Debtor-Plaintiff for his services in the McLeod Adversary.

29. On November 7, 2019, David Breen served the Complaint on McLeod Hospital and filed a Certificate of Service in the Adversary.

30. David Breen extended the time for McLeod Hospital to respond to the Complaint, and on December 6, 2019, he and Matthew Breen filed and served an Amended Complaint.

31. In the Amended Complaint, David Breen and Matthew Breen increased the actual and punitive damages from $50,000 to $75,000[16] by notation in the caption of the pleading, and he also alleged McLeod Hospital's transmission of a second collection letter to the Debtor-Plaintiff seeking the same $6,065.00 sought in the first collection letter. All other allegations in the Amended Complaint were identical to the allegations stated in the initial Complaint.

32. In response to the Amended Complaint, McLeod Hospital retained counsel and filed a motion to dismiss on December 20, 2019. In the motion, McLeod Hospital sought dismissal of Debtor's negligence and SCUTPA claim on federal preemption grounds. McLeod Hospital also sought dismissal of Debtor's demand for punitive damages because the alleged violation of stay was not the product of "egregious conduct" justifying any punitive damages.

33. On January 24, 2020, David Breen filed a motion for summary judgment. The single-page motion lacked citations to any materials of record in the case or admissible evidence showing the absence of any genuinely disputed material fact or Debtor-Plaintiff's entitlement to judgment as a matter of law.

---

[16] Like all the other Complaints filed for the Adversary Proceedings, the $75,000 demand was stated in the caption of the Amended Complaint and was not included in the prayer for relief.

34.    On January 27, 2020, Matthew Breen filed Debtor-Plaintiff's objection to McLeod Hospital's motion to dismiss.  The Court scheduled a hearing for the Motion to Dismiss on February 5, 2021.

35.    After the hearing on the Motion to Dismiss, the Court entered an order on February 13, 2020, that granted McLeod Hospital's motion to dismiss in part by dismissing Debtor's negligence and SCUTPA claims with prejudice on federal preemption grounds.  The Court denied the motion to dismiss in part by permitting Debtor-Plaintiff to continue pursuing punitive damages in the adversary proceeding because at the Rule 12(b)(6) stage, all allegations in the Amended Complaint must be deemed true.[17]

36.    On February 7, 2020, the Court scheduled a hearing for Debtor's motion for summary judgment on April 30, 2020.

37.    On February 20, 2020, David Breen reported settlement of the Adversary by email to chambers, as required by chambers for payments made in actions dismissed under Fed. R. Bankr. P. 7041, and advised that McLeod Hospital agreed to pay $10,000 to the Debtor-Plaintiff "for damages inclusive of attorney fees."

38.    On February 21, 2020, the Court requested a breakdown of the settlement payment, including the specific amount of the settlement payment for attorney's fees.   In response, David Breen reported that the Debtor-Plaintiff would receive $2,000 for "her emotional distress damages as she is unemployed and has no lost wages."  The $8,000 for payment of attorney's fees and costs arose from a reduction of the billable attorney fees and litigation costs from $9,016.32 by $1,016.32.  After receipt of the settlement proceeds, David Breen and the Debtor-Plaintiff agreed

---

[17]    The Court notes that McLeod Hospital also argued that Plaintiffs' transmission of a cease-and-desist letter could have avoided the litigation and resolved the dispute, but such argument was not considered during the motion to dismiss hearing because it was an issue outside of the pleadings under examination during the Rule 12(b)(6) hearing.

to a split with 80% going to David Breen (thereafter, split with Matthew Breen) and 20% to the Debtor-Plaintiff.

39.     On the same day that he disclosed settlement of the McLeod Adversary, David Breen also filed a Notice of Stipulated Dismissal, signed by David Breen only, providing that the McLeod Adversary had been resolved and was now moot.

<u>Attorney Fee Disclosures and Review</u>

40.     The settlement disclosures and billing records ultimately provided to the Court show that David Breen and Matthew Breen evenly divided $15,600 in fees from the settlement payments for their services in the four Adversary Proceedings filed on behalf of Debtor-Plaintiff. According to counsels' statements to the Court, David Breen and the Debtor-Plaintiff agreed upon the amount of $15,600 as compensation, to be deducted from the settlement proceeds and retained by counsel before disbursement of the remainder of the settlement proceeds ($3,900) to the Debtor-Plaintiff.

41.     On March 29, 2021, which was over one year after entry of the representation agreements for the Adversary Proceedings, David Breen filed an Amended Disclosure of Compensation in Debtor's bankruptcy case to disclose $800 that he retained in attorney's fees from the settlement for the Beach Anesthesia Adversary; $3,000 that he retained in attorney's fees from the settlement for both Carolina Regional Adversaries, and $4,000 that he retained from the settlement for the McLeod Adversary.

42.     David Breen also appended copies of his initial May 30, 2019 compensation agreement with the Debtors for filing their bankruptcy case and the three representation agreements that the Debtor-Plaintiff signed to retain David Breen's services in the Adversary Proceedings.

12

43.      On March 29, 2021, Matthew Breen also filed a Disclosure of Compensation in Debtors' bankruptcy case to disclose $800 that he retained in attorney's fees from the settlement for the Beach Anesthesia Adversary; $3,000 that he retained in attorney's fees from the settlement for both Carolina Regional Adversaries, and $4,000 that he retained from the settlement for the McLeod Adversary.

44.      Matthew Breen did not append copies of any written representation or compensation agreements between him and the Debtor-Plaintiff.[18]  Moreover, Matthew Breen has not produced any copies of any written representation or compensation agreements between him and the Debtors or the Debtor-Plaintiff to date in these proceedings.

*Compensation Issues in All Adversary Proceedings*

45.      Beginning with the Court's order entered on March 25, 2021, the Court conducted multiple hearings to review David Breen's and Matthew Breen's compliance with the compensation disclosure requirements provided by §§ 329 & 330 and Rules 2016(b) and 2017 and the compensation received in the Debtors' bankruptcy case and several other similar cases filed by David Breen or both David Breen and Matthew Breen.

46.      The last of these hearings was continued to June 29, 2021, pursuant to an order entered on June 11, 2021.  In the June 11, 2021 order, the Court expressed concerns regarding the timeliness of compensation disclosure and the attorney's fees received by David Breen and Matthew Breen and identified several issues with the billing statements provided for the Adversary Proceedings, including the following: unnecessary services or unreasonable charges, lack of benefit to debtor/estate, lumping or grouping of services, insufficient description of services or

---

[18]      The Court notes that unlike the Amended Compensation Disclosures filed in *In re Defeo*, C/A No. 20-03738-JW, there is no record of David Breen signing a co-counsel retention agreement with Matthew Breen to secure his services for the Adversary Proceedings under review here.

detail provided for numerous billing entries, duplication of services, billing for clerical or non-attorney services, use of a minimal billing increment greater than a tenth of an hour, the identification of services performed by each attorney, and the percentage of payment to attorneys versus payment to debtor.  The order provided David Breen and Matthew Breen with an opportunity to present copies of any unfiled documents or emails supporting their compensation at the continued hearing.

47.    David Breen and Matthew Breen appeared at the hearing on June 29, 2021, but presented no additional evidence, choosing to rely solely on the previously filed billing statements, their recently filed disclosures of compensation, and some legal arguments.

## CONCLUSIONS OF LAW

### I.    Authority to Review Compensation and Disclosures

The Court has the statutory duty and authority to review compensation paid to a debtor's attorney under 11 U.S.C. § 329[19] and Fed. R. Bankr. P. 2016 and 2017.  Under § 329, "[t]he court has an independent judicial responsibility to review the fees of professionals *sua sponte,* even in the absence of objections." *In re Parrilla,* 530 B.R. 1 (Bankr. D.P.R. 2015) (citing *Tri–State Fin., LLC. v. Lovald,* 525 F.3d 649, 655 (8th Cir.2009), *cert. denied* 555 U.S. 1046 (2008)); *In re Claudio*, 459 B.R. 500, 512 (Bankr. D. Mass. 2011); *In re LaFrance*, 311 B.R. 1, 20–21 (Bankr. D. Ma. 2004).  Section 329 requires an attorney for the debtor to file a statement of compensation paid or agreed to be paid "for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation."

An action for willful violation of the automatic stay is a statutory cause of action provided in the Bankruptcy Code and filed exclusively in the Bankruptcy Court and certainly qualifies as

---

[19]    Further references to the Bankruptcy Code shall be by section number only.

representation "in connection with the case." *See In re Defeo,* 627 B.R. 341, 346 (Bankr. D.S.C. 2021).    Rule 2017 provides that "[o]n motion by the debtor, the United States trustee, or *on the court's own initiative*, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case." Fed. R. Bankr. P. 2017 (emphasis added).

To facilitate the Court's review of compensation paid to a debtor's attorney under § 329, Rule 2016(b) requires a debtor's attorney to file the statement required by § 329 "within 14 days after the order for relief" and to file a supplemental statement "within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b).    To the extent the fees exceed the reasonable value of services provided or in the absence of compliance with fee disclosure requirements imposed by the Bankruptcy Code and Rules, the Court may enter an order to disgorge or return the payment of any professional fees to the estate or the entity that made the payment. 11 U.S.C. § 329(b); *see In re Parast,* 612 B.R. 698, 709 (Bankr. D.S.C. 2020); *In re Henderson,* 360 B.R. 477, 484 (Bankr. D.S.C. 2006); *In re TJN, Inc.*, 194 B.R. 400, 403–04 (Bankr. D.S.C. 1996).

The disclosure requirements under § 329 apply regardless of whether the attorney for the debtor intends to receive compensation from the estate or is being paid by a third party. *In re Parast,* 612 B.R. at 706; Fed. R. Bankr. P. 2016(b).[20]    The debtor's attorney's duty to disclose

---

[20]    Rule 2016(b) provides:

**(b) Disclosure of compensation paid or promised to attorney for debtor**

Every attorney for a debtor, ***whether or not the attorney applies for compensation***, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as

representation agreements and new fee payments is an ongoing duty that continues throughout the course of the debtor's bankruptcy case.

The Court's duty to review fees under § 329 exists even if a case is dismissed or closed. *See, e.g., In re 5900 Assocs.*, 468 F.3d 326, 330 (6th Cir. 2006) ("Dismissal of a case…cannot abrogate the bankruptcy court's statutorily imposed duty" to review attorney's fees paid to debtors' counsel); *In re Brown*, 371 B.R. 486, 503 (Bankr. N.D. Okla. 2007) (citing *In re Henderson*, 360 B.R. 477, 484 (Bankr. D.S.C. 2006)).   The proceeds from the settlement of an adversary proceeding alleging a violation of the stay are property of the debtor's Chapter 13 bankruptcy estate.  *See* 11 U.S.C. §§ 541 & 1306; *In re Crouser*, 476 B.R. 340 (Bankr. S.D. Ga. 2012), *aff'd*, 567 Fed. App'x 902 (11th Cir. 2014) (holding that post-petition settlement proceeds arising from a willful violation of stay action are property of a Chapter 13 bankruptcy estate).[21]   Accordingly, all fees paid under the settlements for the Adversary Proceedings being reviewed by the Court are subject to scrutiny. 11 U.S.C. §§ 329(a) & 330; Fed. R. Bankr. P. 2016(b); 2017(b).

## II.      Failure to Properly Disclose Compensation and Agreements and Improper Fee Sharing

### a.   Matthew Breen's failure to secure representation and compensation agreements signed by the Debtors or Debtor-Plaintiff for his services in the Adversary Proceedings does not comply with the requirements of 11 U.S.C. § 528.

In relevant part, section 528 of the Bankruptcy Code requires a written contract signed by

---

the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

[21]    Debtors have not claimed an exemption for the settlement proceeds.

16

Debtor-Plaintiff to retain Matthew Breen's services in the Adversary Proceedings as follows:

> A debt relief agency shall not later than 5 business days after the first date on which
> such agency provides any bankruptcy assistance[22] services to an assisted person
> *... execute a written contract with such assisted person that explains clearly and*
> *conspicuously*—
>> (A) the services such agency will provide to such assisted person; and
>> (B) the fees or charges for such services, and the terms of payment.

11 U.S.C. § 528(a)(1) (2021) (emphasis added).   For each of the Adversary Proceedings, only

David Breen secured and ultimately but untimely disclosed written representation agreements

signed by the Debtor-Plaintiff.

The record reflects that Matthew Breen failed to secure a signed, written contract with the

Debtor-Plaintiff before receiving compensation for his services in the Adversary Proceedings.   In

the absence of a written compensation agreement between Matthew Breen and the Debtor-

Plaintiff, it appears that David Breen and Matthew Breen rely on the following language in each

of David Breen's supplemental compensation agreements with the Debtor-Plaintiff:

> Client agrees to pay attorney David H. Breen and any other attorney he deems in
> his sole discretion necessary to work on the case and matter or associates co-counsel
> with on the case at the rate of $350.00 per hour for any and all attorneys and their
> work/time performed or done in the matter/case….

This procedure for engaging additional debtor's counsel, however, does not comply with the

requirements of 11 U.S.C. § 528, which requires a separate written agreement between the Debtor-

---

[22]      The term "bankruptcy assistance" is defined by 11 U.S.C. § 101(4A) as "any goods or services sold or
otherwise provided to an assisted person with the express or implied purpose of providing information, advice,
counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding
on behalf of another or **providing legal representation with respect to a case or proceeding under this title**."

Plaintiff and Matthew Breen.[23]   11 U.S.C. § 528; *see also Law Solutions of Chicago LLC v. Corbett,* 971 F.3d 1299, 1305 (11th Cir. 2020) ("If the attorney qualifies as a debt relief agency, § 528(a) requires that she provide her clients with a written contract that 'clearly and conspicuously' explains the services that will be provided to the client for the agreed upon charge …."); *In re Defeo,* 627 B.R. 341, 346-47 (Bankr. D.S.C. 2021) (recognizing that provisions authorizing David Breen to unilaterally select and sign a retainer agreement for additional counsel to assist with prosecution of an adversary proceeding did not meet the requirements of 11 U.S.C. § 528); 4 COLLIER ON BANKRUPTCY ¶ 528.02[1] (16th ed. rev. 2021) ("Section 528(a)(1) requires a debt relief agency to execute a written contract with the assisted person that explains clearly and conspicuously the services that the agency will provide to the assisted person, the fees or charges for those services and the payment terms.").

To date, neither David Breen nor Matthew Breen has produced copies of any written compensation agreements between the Debtor-Plaintiff and Matthew Breen.   The absence of written compensation agreements signed by the Debtor-Plaintiff for the retention of Matthew Breen for the Adversary Proceedings is a clear departure from the requirements of § 528.

> **b. David Breen and Matthew Breen failed to timely disclose compensation agreements with the Debtor-Plaintiff and payments during the 14-day period prescribed by Fed. R. Bankr. P. 2016(b).**

Rule 2016(b) directs every attorney for a debtor to file the disclosure of compensation

---

[23]     This Court previously found that David Breen and Matthew Breen materially failed to timely and correctly disclose, in full, the compensation agreements for their services in an order entered on March 25, 2021, in a similar adversary proceeding, *Defeo v. Radius Global Solutions LLC*.[23]  *See In re Defeo*, 627 B.R. at 346-47.  In that order, the Court also concluded that Matthew Breen's failure to secure a retainer agreement signed by the debtor as required by 11 U.S.C. § 528 meant that Matthew Breen's retainer agreement for *Defeo v. Radius Global Solutions LLC*—which was only signed by David Breen—was void and unenforceable under 11 U.S.C. § 526.  The agreement was deemed void because it was not signed by the debtor as required by 11 U.S.C. § 528.  *Id.* at 347.  Similar compliance issues addressed in the March 25, 2021 order are present in the Adversary Proceedings under review here, and the Court finds no reason to depart from the analysis and conclusions reached in that order and makes those same findings in this case. Debtor cannot waive protections under §§ 526 and 528. *Id.*

required by § 329 within 14 days after the order for relief or a supplemental statement *within 14 days after any payment or agreement not previously disclosed*, whether or not the attorney applies for compensation. Fed. R. Bankr. P. 2016(b) (emphasis added); *In re Defeo*, 627 B.R. at 347.

In the Debtors' Chapter 13 case, David Breen filed a Disclosure of Compensation with the Debtors' petition on October 28, 2019 ("Initial Disclosure"). In that Initial Disclosure, he indicated that he had agreed to compensation of a $3,700 flat fee, which was the expedited no-look fee approved by the Court at that time for representation of Debtor. In the Initial Disclosure form, David Breen disclosed that his fee included "legal services to the debtor for all aspects of the bankruptcy case, including…[r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." The Initial Disclosure appears to have been based on a bankruptcy representation agreement between David Breen and Debtors dated May 30, 2019**,** which was not filed with the Initial Disclosure but was later filed as an attachment to an Amended Disclosure filed by David Breen on March 29, 2021. The language of the bankruptcy representation agreement materially differs from the Initial Disclosure because the representation agreement appears to provide for additional hourly charges beyond the $3,700 fee arising from additional services performed post-confirmation, including the prosecution or defense of any adversary action, while the Disclosure provides that such services are included with the $3,700 fee. Therefore, the Court finds that the Initial Disclosure was inaccurate and misleading.

In addition, David Breen obtained separate representation agreements for each of the Adversary Proceedings which were not timely disclosed to the Court. Each noted that David Breen would be compensated for his services based upon an hourly rate and that the Debtor-Plaintiff was fully responsible for payment regardless of the outcome of the litigation. [24]

---

[24]    However, David Breen represented that he had never actually charged the hourly fee to any client if he did not collect from the defendants.

Finally, in response to a chambers requirement to report any monetary payment made in cases ended by the filing of a Notice of Stipulated Dismissal, David Breen sent confidential emails to chambers staff on November 8, 2019, disclosing the settlement of the Beach Anesthesia Adversary for $2,000; on January 8, 2020, disclosing the settlement of the Carolina Regional Adversaries for $7,500; and on February 21, 2020, disclosing the settlement of the McLeod Adversary for $10,000.  None of these emails disclosed the amount of attorney's fees David Breen and Matthew Breen received from the settlement proceeds.[25]  Regarding the McLeod Adversary, upon a specific request by the Court for a breakdown of the settlement, David Breen reported by confidential email on February 21, 2020, that the attorney's fees received by counsel from the settlement was $8,000. Regarding the Beach Anesthesia Adversary and Carolina Regional Adversaries, no disclosure of the compensation received was made until David Breen and Matthew Breen filed their supplemental Form B2030 disclosures on March 29, 2021.

Overall, the record shows that counsel failed to timely disclose compensation agreements and payments as required by 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016.

### c.  David Breen's and Matthew Breen's undisclosed fee sharing arrangements for the Adversary Proceedings violate 11 U.S.C. § 504.

David Breen represented to the Court that he was not sharing any fees when he filed his Initial Disclosure of Compensation (B2030) form for the $3,700 fee that he charged the Debtors to file their Chapter 13 case, which purported to include representation of Debtors in adversary proceedings.  In relevant part, the Bankruptcy Code prohibits fee sharing among professionals by stating as follows in section 504(a):

---

[25]    The undersigned's Chambers Guidelines provide that the "terms of any settlement resulting in the filing of a Stipulation of Dismissal must be provided to chambers for *in camera* review if any consideration is exchanged in return for the dismissal."  This requirement is in place for the purpose of determining whether there is a pattern of violations or abuse by a particular creditor and not to examine fees. **The obligation to disclose compensation and agreements falls upon counsel and is not dependent upon a court's request or investigation**.

Case 19-05230-eg   Doc 63   Filed 10/26/21   Entered 10/26/21 16:04:43   Desc Main
Document   Page 21 of 39

> Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title *may not share or agree to share—*
>> (1) any such compensation or reimbursement with another person; or
>> (2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a) (emphasis added). "Section 504 of the Bankruptcy Code prohibits any person receiving compensation or reimbursement of expenses under subsection 503(b)(2) or (b)(4) from sharing compensation with another person." 4 COLLIER ON BANKRUPTCY ¶ 504.01[1] (16th ed. rev. 2021). A review of 11 U.S.C. §§ 504(a) & (b) reveals the following three elements that must be met for a violation to occur:

(1) A person or entity received compensation under 11 U.S.C. §§ 503(b)(2) or 503(b)(4);

(2) A person or entity shared or agreed to share in the compensation received; and

(3) The person or entity that shared the compensation does not fit within one of the statutory exceptions.

11 U.S.C. §§ 504(a) & (b); *see also In re Fair*, No. 15-33400-SGJ-13, 2016 WL 3027264, at *11 (N.D. Tex. May 18, 2016); *Mazzei v. Winnecour (In re Mazzei)*, 522 B.R. 113, 132 (Bankr. W.D. Pa. 2014). All three elements for a violation of section 504 are present in the Adversary Proceedings.

First, the attorney's fees that David Breen and Matthew Breen secured from the Adversary Proceeding settlements were based upon an agreement by David Breen with Debtor-Plaintiff to charge attorney's fees on an hourly basis that would be charged and due regardless of recovery. Such compensation is necessarily reviewable under § 330(a) and as an administrative expense under § 503(b)(2) or (b)(4).[26] The record reflects that all the attorney's fees that David Breen and

---

[26] As relevant here, § 330(a)(4)(B) states in part that:

In a … chapter 13 case…, the court may allow reasonable compensation to the debtor's attorney for representing the interests of a debtor in connection with the bankruptcy case based on a

Matthew Breen received from all the settlements for the Adversary Proceedings (which were all prosecuted "in connection with" Debtor-Plaintiff's Chapter 13 case), are subject to the provisions of 11 U.S.C. § 330(a)(4)(B).[27]   Therefore, if allowed, is subject to treatment as administrative expenses under 11 U.S.C. § 503(b)(2).

Next, David Breen and Matthew Breen shared and agreed to share in the attorneys' fees provided as part of the settlement payments for the Adversary Proceedings.  Because both David Breen and Matthew Breen billed their services for the Adversary Proceedings and shared in the attorney fees deducted from the settlements, they shared and agreed to share in the compensation arising from the settlements of the Adversary Proceedings.

Finally, neither of the exceptions listed in § 504(b) apply.  The statutory exceptions to fee sharing in § 504(b) are narrowly limited to fees shared among "(1) a member, partner, or regular associate in a professional association, corporation, or partnership, and (2) an attorney for a creditor that files a petition under § 303 and any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney." *In re Harris-Nutall*, 572 B.R. 184, 190 (Bankr. N.D. Tex. 2017).[28]

First, Matthew Breen expressly advised the Court that, despite the familial relationship, he is not, nor has he ever been an employee or associate of David Breen or his law firm in any way.

---

consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

[27]    David Breen and Matthew Breen's prosecution of the Adversary Proceedings, which were centrally based on prosecution of willful violation of stay claims before this Court, are matters "in connection with" the Debtors' pending Chapter 13 case.  *See In re Defeo,* 627 B.R. at 346; *see also In re In re Harris-Nutall*, 572 B.R. 184, 190 (Bankr. N.D. Tex. 2017) (concluding that special counsel's work in the prosecution litigation against debtor's secured mortgage lender via adversary proceeding was "in connection with" debtor's bankruptcy case)

[28]    "Although not an express exception, courts have also authorized fee arrangements between unaffiliated professionals *when they are fully disclosed and approved* by the court *in advance* of any employment or work activity." *Mazzei*, 522 B.R. at 131 (citing *In re Ferguson*, 445 B.R. 744, 752 (Bankr. N.D. Tex. 2011)) (emphasis added).  This is not the case here because David Breen and Matthew Breen never fully disclosed their fee sharing arrangement or secured court approval of such arrangement *before* they began work on the Adversary Proceedings.

Next, all the Adversary Proceedings arise from a Chapter 13 case voluntarily filed by the Debtors—not an involuntary Chapter 7 or 11 case filed pursuant to 11 U.S.C. § 303. Moreover, there was no disclosure of any agreement or Court approval of such an arrangement before Matthew Breen appeared and started working the Adversary Proceedings. More than a year after he settled the Adversary Proceedings and distributed the settlement proceeds among the Debtor-Plaintiff and Matthew Breen, David Breen filed untimely Amended Disclosure of Compensation forms that revealed for the first time an intent to share or split fees collected from the settlements for the Adversary Proceedings with Matthew Breen.

Under the circumstances present in all Adversary Proceedings, the fee sharing arrangements between David Breen and Matthew Breen violate the prohibitions imposed by 11 U.S.C. § 504(a) and constitute additional violations of Rule 2016(b), which expressly requires disclosure of "whether the attorney has shared or agreed to share compensation with any other entity" and include "the particulars of any such sharing agreement or agreement to share…within 14 days after any payment or agreement not previously disclosed." Fed. R. Bankr. P. 2016(b).

**d. Consequences for lack of compliance with the requirements imposed by 11 U.S.C. §§ 329(a), 504, & 528 and Fed. R. Bankr. P. 2016(b).**

The Court has wide-discretion to fashion an appropriate remedy for non-compliance with the requirements under §§ 329(a), 504, 528, and Fed. R. Bankr. P. 2016(b) and 2017, including denying or disgorging the full amount of compensation requested or paid that was not properly disclosed. *See* 11 U.S.C. § 329(b); *In re TJN, Inc.*, 194 B.R. at 403–04 (noting that the sanction for noncompliance with Fed. R. Bankr. P. 2016(b) is in the discretion of the Court and ultimately reducing the compensation paid to a law firm after it failed to comply with requirements of the rule). "The disclosure requirements imposed by § 329 are mandatory, not permissive, and an

attorney who fails to comply with the disclosure requirements forfeits any right to receive compensation." *Peugeot v. United States Trustee (In re Crayton)*, 192 B.R. 970, 981 (9th Cir. BAP 1996). Likewise, it is widely recognized that "[t]here is simply no doubt that section 504(a) is intended to be mandatory and preemptory." *In re Smith*, 397 B.R. at 819 (quoting 4 COLLIER ON BANKRUPTCY ¶ 504.02[1] at p. 504-4 (15th ed. rev. 2005)).

In this case, Matthew Breen failed to prove his compliance with 11 U.S.C. § 528 by failing to produce copies of any written representation agreements with Debtor-Plaintiff for his services in the Adversary Proceedings. Although David Breen secured retainer agreements signed by Debtor-Plaintiff for his work in the Adversary Proceedings, they contradicted his original case disclosure and he failed to timely file the necessary compensation disclosures for those additional compensation agreements as required by 11 U.S.C. § 329(a) and Rule 2016(b). Additionally, David Breen's and Matthew Breen's fee sharing arrangement for the Adversary Proceedings violated 11 U.S.C. § 504(a).

As this Court has previously recognized "sanctions applied by courts for failure to comply with Rule 2016(b) have often been harsh. Many courts have denied all compensation because of counsel's failure to comply with these provisions." *In re TJN, Inc.*, 194 B.R. at 403-04 (citing *In re Quality Respiratory Care, Inc.*, 157 B.R. 180 (Bankr. D. Me. 1993)). Previously, this Court has found that debtor's counsel's failure to file statements disclosing the compensation that he received from the debtor for services rendered was "sufficient grounds to sanction [debtor's counsel] and disgorge all of the attorneys' fees he received ...." *In re Henderson*, 360 B.R. 477, 486 (Bankr. D.S.C. 2006).

The remedy for violation of 11 U.S.C. § 504 can be similarly harsh because "the presumptive remedy" for a violation of section 504 "is denial or disgorgement of compensation."

*In re Mazzei*, 522 B.R. at 132 (citing cases); *see e.g., In re Smith*, 397 B.R. 810, 817 (Bankr. E.D.
Tex. 2008) (requiring disgorgement of all fees that debtor's counsel collected as a "referral fee"
earned in violation of § 504 along with accrued interest); *In re Egwu,* Case No. 10-30652-RAG,
2012 Bankr. LEXIS 4930, at *16 (Bankr. D. Md. 2018) (requiring disgorgement of all fees paid
from undisclosed fee sharing agreement between counsel); *In re Cupboards, Inc.*, 190 B.R. 969,
971 (Bankr. M.D. Fla. 1996) (ordering disgorgement of all fees collected from debtor after debtor's
counsel failed to file timely Rule 2016(b) disclosures to disclose fee sharing arrangement used by
debtor's counsel).   It has also been recognized that a fee sharing arrangement that violates
subsection 504 is void.  *See In re Greer,* 271 B.R. 426, 434 (Bankr. D. Mass. 2002) (holding that
fee sharing arrangements that violated § 504 were void).

Nevertheless, given the discretion afforded to the Court in formulating an appropriate
remedy, the Court "may consider the particular circumstances of the debt relief agency when fixing
sanctions."  *In re Defeo*, 327 B.R. at 348; *see also In re Anderson,* 936 F.2d 199, 204 (5th Cir.
1991) (recognizing that bankruptcy court was in the best position to determine the amount of fees
to be awarded to counsel who was unaffiliated with his father's firm, which served as debtor's
counsel, and who also failed to satisfy 11 U.S.C. § 329 and Fed. R. Bankr. 2016(b) and improperly
shared in fees in violation of 11 U.S.C. § 504); *In re Matis*, 73 B.R. 228, 234 (Bankr. N.D.N.Y.
1987) (concluding that the bankruptcy court had discretion to determine extent of fee disgorgement
for a violation of § 504).  To this end, the Court has the authority to consider and apply a remedy
short of full disgorgement of compensation that was not timely or properly documented with the
debtor or timely disclosed or in violation of the fee sharing prohibitions in the Code.  *See, e.g.,*
*TJN, Inc.,* 194 B.R. at 404 (reducing compensation received by debtor's counsel from third-party
by $3,500 instead ordering full disgorgement of $15,000 in compensation at issue for non-

compliance with disclosure requirements of Fed. R. Bankr. R. 2016(b)); *In re Matis*, 73 B.R. at 234 (requiring disgorgement of only a portion of impermissibly shared fee).

For their work in the Adversary Proceedings, David Breen and Matthew Breen were each separately compensated in the amount of $7,800.  The records for the Adversary Proceedings and submissions of David Breen and Matthew Breen, however, do not provide any satisfactory basis for non-compliance with the disclosure requirements imposed by the Bankruptcy Code and Rules, the Code's fee sharing restrictions,[29] or any compelling circumstances explaining why David Breen and Matthew Breen could not seek this Court's approval of their fee sharing arrangements before they commenced the Adversary Proceedings.

Due to the lack of compliance with compensation disclosure provisions of the Bankruptcy Code and Rules, the Court is compelled to conclude that a partial fee disgorgement of 50% is warranted for David Breen and a full fee disgorgement of 100% is warranted for Matthew Breen. Under the circumstances, the Court finds that these deductions appear appropriate but will further consider examine the reasonableness of compensation paid to David Breen and Matthew Breen for the Adversary Proceedings pursuant to §§ 329(b) and 330(a)(4)(B).

### III.    Review of Compensation

Section 329(b) of the Bankruptcy Code authorizes court review of compensation paid to a debtor's attorney, providing that upon a determination that the compensation of an attorney for a

---

[29]    The undisclosed fee sharing arrangement between David Breen and Matthew Breen exacerbates the problems arising from the lack of timely compliance with Rule 2016(b).  Section 504 was designed to prevent diminution of the bankruptcy estate by professionals sharing fees provided administrative expense treatment and to avoid the following negative effects of fee sharing:

> Whenever fees or other compensation is shared among two or more professionals, an incentive may exist to adjust upward the compensation sought in order to offset any diminution to the share of either.  Consequently, sharing of compensation can inflate the cost of a bankruptcy case to the debtor, and therefore to the creditors …. The potential for harm makes such arrangements reprehensible as a matter of public policy as well as a violation of the attorney's ethical obligations.

4 Collier on Bankruptcy ¶ 504.01 (16th ed. rev. 2021).

debtor exceeds the reasonable value of services provided, a "court may…order the return of such

payment to the extent excessive to the estate… or …the entity that made such payment." 11 U.S.C.

§ 329(b)(2).   The Court's review of the reasonableness of the compensation received by David

Breen and Matthew Breen in this case is further authorized by § 330(a)(4)(B), which provides that

"[i]n a … chapter 13 case in which the debtor is an individual, the court may allow reasonable

compensation to the debtor's attorney for representing the interests of the debtor *in connection*

*with the bankruptcy case* based on a consideration *of the benefit and necessity of such services*

*to the debtor* and other factors set forth in this section."   11 U.S.C. § 330(a)(4)(B) (emphasis

added). The applicable factors set forth in § 330(a)(3) are similar to those set forth in *Barber v.*

*Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978) discussed below. [30]    Additionally, the Court is

authorized to determine whether any payment of money or any transfer of property, or any

agreement therefor, by the debtor to an attorney after the entry of the order for relief is excessive

pursuant to Fed. R. Bankr. P. 2017(b), which provides for such review "on the court's own

initiative."

As attorneys for the Debtors, the fees retained by David Breen and Matthew Breen are

subject to review by the Court even though they were part of a settlement paid by the defendants

to resolve the Adversary Proceedings.  *See* § 329 (requiring an attorney representing a debtor to

disclose compensation regardless of the whether or not the attorney applies for compensation and

allowing the court to review that compensation and order the return of excessive compensation

paid to the estate **or the entity who made that payment**); *In re Walters,* 868 F.2d 665, 668 (4th

---

[30]    The factors set forth in § 330 include: the "time spent on such services;" "rates charged for such services;"
whether such services were "necessary" or "beneficial;" "whether the services were performed within a reasonable
amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed;"
"whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy
field;" and "whether the compensation is reasonable based on the customary compensation charged by comparably
skilled practitioners."

Cir. 1989)("[A]ny payment made to an attorney for representing a debtor in connection with a bankruptcy proceeding is reviewable by the bankruptcy court notwithstanding the source of payment.").  At no time did any of the defendants designate or allocate the settlement funds into specified amounts for attorney's fees as opposed to other damages asserted by the Debtor-Plaintiff. In consultation with Debtor-Plaintiff, David Breen decided how to allocate the settlement funds received.  Accordingly, the retention of such fees by David Breen and Matthew Breen from the Adversary Proceedings' settlements constitutes reviewable compensation.[31]

### IV.    Burden of Proof & Standard for Reasonableness

David Breen and Matthew Breen bear the burden of establishing the reasonableness of their fees. *In re Smith,* 624 B.R. 781, 795 (Bankr. D.S.C. 2021); *In re Ward,* C/A No. 20-03311, 2021 WL 1940743 at *3 (Bankr. D.S.C. May 13, 2021) (citing *In re Busche,* C/A No. 15-02559-DD, 2015 WL 6501157, at *3 (Bankr. D.S.C. Oct. 27, 2015)); *In re Kestner,* No. 12-32831-RAG, 2015 WL 1855357, at *10 (Bankr. D. Md. Apr. 20, 2015). When determining the reasonableness of an attorney's fee award, courts generally apply the lodestar method, which requires a determination of the number of hours reasonably spent on a matter multiplied by a reasonable hourly rate for such services.  *See Weatherford v. Tinmark (In re Weatherford)*, 413 B.R. 273 (Bankr. D.S.C. 2009) (citing *Daly v.  Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986)).

In addition, the Court should also consider the following twelve factors adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (citing factors identified in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)):

(1) The time and labor expended; (2) the novelty and difficulty of the questions

---

[31]    "The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys. To ensure such protection, bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules." *In re Kisserberth*, 273 F.3d 714 (6th Cir. 2001) (internal citations omitted).

raised; (3) the skill required to properly perform the legal services rendered;(4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectation at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and his or her client; (12) attorney's fees awards in similar cases.

"[T]he determination of what is a reasonable amount of compensation is within the sound discretion of the court." *In re Goodbar,* 456 B.R. 644 (Bankr. W.D.Va. 2011) (citing *In re Larson,* 346 B.R. 693, 700 (Bankr. E.D.Va. 2006)).

The Fourth Circuit has held that a bankruptcy court may rely on its own knowledge and expertise of the reasonable attorney's fees in the community to determine an appropriate attorney's fee award. *See In re Botero-Paramo*, 483 Fed. App'x 779, 788-89 (4th Cir. 2012) ("[B]ecause nearly every case on a bankruptcy court's docket involves reviewing attorneys' fees and costs in the community, we find that bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise."). This Court routinely reviews fee applications by debtor's counsel and is familiar with the billing practices of bankruptcy attorneys in South Carolina. Therefore, the Court can determine reasonable attorney fees in this matter based on its own experience and expertise.

## V.      Review of Attorney's Fee

David Breen and Matthew Breen each retained $7,800 of the $15,600 in attorney's fees paid from the settlements for the Adversary Proceedings.   The billing statements for the Adversary Proceedings disclose that David Breen billed 33.33 hours of attorney time at the rate of $350 per hour, for a total of $11,660.82, which he reduced to $7,800 pursuant to a post settlement agreement with Debtor-Plaintiff.  Matthew Breen billed 33.15 hours of attorney time at the rate of $250 per hour, for a total of $8,287.50, which he reduced to $7,800 pursuant to a post settlement agreement

with Debtor-Plaintiff.   Collectively, the settlements for the Adversary Proceedings netted the

Debtor-Plaintiff $3,900 for her alleged damages.

Applying the lodestar method and the *Barber* factors, the Court finds that the $15,600 fee

that David Breen and Matthew Breen shared is unreasonable for the following reasons:

**a.  *Lodestar Analysis***

1.  Billing Rate

Based on its familiarity with the billing rates of bankruptcy attorneys in Chapter 13 cases

in this District, the Court finds that David Breen's billable rate of $350 per hour and Matthew

Breen's billable rate of $250 per hour for the Adversary Proceedings are reasonable. [32]

2.  Time Billed for Services

The billing statements lack sufficient detail to allow the Court to determine the

reasonableness of the charges. The vast majority of time entries for emails and telephone calls

entered by David Breen and Matthew Breen lack any description regarding the subject and nature

of the communication. "Mere listing of phone conferences or telephone calls or conferences

without more description is not sufficient for compensation." *In re C & J Oil Co., Inc.*, 81 B.R.

398, 403 (Bankr. W.D. Va. 1987).  In some of the entries it is unclear how many emails were sent

or reviewed, as the entry merely provides that David Breen or Matthew Breen "reviewed emails"

or "emails to client."  As a matter of law, vague time entries such as those used by David Breen

and Matthew Breen have been recognized as unreasonable.  *See In re Parilla*, 530 B.R. 1, (Bankr.

D. Puerto Rico 2015) (refusing to compensate debtor's counsel for vague time entries such as

"Telephone conference with client re pending matter" or "Letter to client re pending matters");

---

[32]     Under the representation agreement for the Beach Anesthesia Adversary, David Breen stated a rate of $400
per hour for his services, but he only billed at the rate of $350 per hour in the billing statement.   Under the
agreements for the Carolina Regional Adversaries and the McLeod Adversary, David Breen billed $350 per hour for
his services.

United States Trustee Guidelines, 28 C.F.R. § pt. 58, App. A ("Time entries for telephone calls,

letters, and other communications should give sufficient detail to identify the parties to and the

nature of the communication."); *In re Goodbar,* 456 B.R. 644, 651 (Bankr. W.D.Va. 2011)

(reducing attorney's compensation based upon inadequate descriptions contained in time records);

*In re Ward,* 190 B.R. 242, 247 (Bankr. D. Md. 1995) (disallowing compensation to attorney for

insufficient description of services performed).

The billing statements also include time entries for work that is clerical in nature but is

nevertheless billed at the Matthew Breen's full $250 per hour rate. [33]    Clerical work does not

normally qualify for compensation under § 330.    *In re Goodbar,* 456 B.R. at 650 (reducing

compensation for time spent on clerical matters such as reviewing CM/ECF notices and "updating

client's file"); *In re Garza,* No. 16-70444, 2020 WL 718444 at *4 (Bankr. S.D.Tex. Feb. 12, 2020)

("Expenses that are not in the nature of professional services are separately unrecoverable

overhead expenses."); *see also* United States Trustee Guidelines, 28 C.F.R. § pt. 58, App. A

(noting that non-reimburseable overhead includes secretarial and other clerical services).

Attorneys may not bill hourly for services that are normally included in the attorney's overhead,

such as scanning, printing, mailing, faxing and copying documents. These services are clerical or

secretarial in nature and are taken into account in the attorney's hourly rate charged to the client.

*In re Market Resources Development Corp.,* 320 B.R. 841, 846 (Bankr. E.D.Va. 2004).

The billing statements also reflect excessive and duplicative time entries.  For example,

David Breen billed 2 hours for drafting the Complaint for the 2nd Carolina Regional Adversary.

---

[33]    For example, Matthew Breen billed 0.5 of an hour in each of the Adversary Proceedings to "travel to USPS
to serve complaint." All the agreements for the Adversary Proceedings provided that "The Client also agrees and
understands that an attorney's assistant time is billed at $100 per hour for all time spent working on the matter."
But according to on-the-record discussions with the Court, neither David Breen nor Matthew Breen employs
administrative staff in their respective offices, instead charging attorney rates for administrative or clerical matters.

However, the Complaint for the 2nd Carolina Regional Adversary was largely the same as the Complaint for the 1st Carolina Regional Adversary, except for a increasing the demand for actual and punitive damages noted in the caption and incorporating a few additional allegations detailing the transmission of another collection letter.   Further examples of excessive time for tasks include David Breen billing his full rate for travel to attend a hearing being covered by Matthew Breen. The hearing did not require attendance of any witnesses, so travel for David Breen's in-person attendance, charged at his higher hourly rate, appears unnecessary and excessive given Matthew Breen's attendance and presentation of argument at the hearing.   Examples of duplicative entries include billing entries for 0.5 hours in both the 1st Carolina Regional Adversary and the McLeod Adversary on the same date to travel to the U.S. Post Office to serve the Complaint and two separate billing entries (0.5 hours and 0.15 hours) on consecutive dates in the 1st Carolina Adversary for drafting a Certificate/Affidavit of Service. *See, e.g., Sergeant v. Acol*, No. PWG-15-2233, 2018 WL 276431 (D. Md. Jan. 3, 2018) (reducing fees sought in discovery dispute by 15% because of duplicate time entries for same task and excessive time for tasks).

The bills for the Adversary Proceedings showed that David Breen billed in increments of .15 of an hour, instead of the widely recognized and accepted increment of one-tenth of an hour. *See, e.g., In re Stoecker,* 114 B.R. 965 (N.D. Ill. 1990) ("It is not objectionable to use .10 hour increments as the minimum unit charged for legal services."); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 426 n.1 (Bankr. D. Ala. 1984) ("It would not be objectionable to use one-tenth of an hour as the minimum charge for a telephone call."); United States Trustee Guidelines, 28 C.F.R. § pt. 58, App. A ("Time entries should be kept contemporaneously with the services rendered in time periods of tenths of an hour.").   Deviation from the one-tenth hour standard creates difficulty in the evaluation of time and creates an appearance of inflated time for minor tasks.

32

***Barber Factors***

    3.  <u>Time and labor expended</u>

The time and labor billed by David Breen and Matthew Breen appears overstated for several reasons. First, the Adversary Proceedings were generally filed and concluded within a short period of time. The Beach Anesthesia Adversary only lasted eleven days. Both Carolina Regional Adversaries were resolved within sixty-five days of the filing of the 1st Carolina Regional Adversary on November 4, 2019, and the McLeod Adversary was resolved within one hundred nine days from the filing of the Complaint on November 4, 2019.

Second, the legal services required to be performed by David Breen and Matthew Breen in the Adversary Proceedings primarily included the drafting and filing of the Complaints, the representation agreements with Debtors, several emails and telephone calls with defendants' counsel (presumably regarding settlement), and the drafting of the Joint Stipulation of Dismissal. The Complaints, representation agreements, and Stipulations of Dismissal all appear to be longstanding form-based documents. The Complaints assert a basic claim for willful violation of the automatic stay under § 362(k) based upon the defendants' mailing of post-petition collection letters. [34]

    4.  <u>Novelty and difficulty of the questions raised</u>

The issues presented in the Adversary Proceedings are neither novel nor complex. The Complaints assert a basic claim for willful violation of the automatic stay under § 362(k) based

---

[34]    A review of the adversary proceeding complaints and notices of stipulation of dismissal used by David Breen in similar stay violation actions since 1993 indicate that David Breen's pleadings follow essentially the same form and content. For the most part, the complaints similarly allege a cause of action for violation of the automatic stay, often adding a count of negligence and unfair trade practices based upon the conduct of violating the stay. The complaints' allegations of facts were very similar, and allegations of damages were primarily for lost wages, emotional distress and reasonable attorney's fees and costs. If anything, over the years David Breen ramped up the form complaint by characterizing the defendant's conduct in more egregious terms and included higher dollar amounts of damages to increase the threat of the lawsuit.

upon the defendants' mailing of post-petition collection letters to Debtor-Plaintiff. There were no complicating facts or issues present.

5.    The skill required to properly perform the legal services rendered

The services provided by David Breen and Matthew Breen did not require unusual skills to perform.

6.    The attorney's opportunity costs in pressing the instant litigation

Neither David Breen nor Matthew Breen presented any evidence of lost opportunity costs because of pursuing the Adversary Proceedings.

7.    The amount in controversy and the results obtained; the customary fee for like work; and fee awards in similar cases

David Breen's and Matthew Breen's practice of filing willful violation of the automatic stay actions seeking damages of more than $25,000 for the post-petition mailing of one or two post-petition collection letters appears excessive and overzealous and primarily aimed at forcing higher nuisance value settlements. The customary attorney's fee for similar cases with similar facts appears to range between $250 and $2,500.   Historically, debtors' counsel, including David Breen,[35] have usually received a lower amount of attorney's fees for willful violation of the automatic stay actions that are resolved early in the proceeding. *See, e.g., In re James-Jenkins,* No. 18-03063-HB, Adv.  Pro.  No.  18-80074-HB, 2019 WL  354700 (Bankr.  D.S.C.  Jan.  25, 2019) (awarding $1,500 in attorney's fees following default judgment); *In re Smith,* C/A No. 05–05537–JW, slip op. (Bankr.  D.S.C.  Dec.  19, 2005) (awarding $2,186.00 in attorney's fees); *In re Miller,*

---

[35]    David Breen has a history of settling such willful violation of stay actions for nominal amounts.   *See, e.g., Smith v. Publishers Clearing House*, Adv. Pro. No. 02-80056-jw (Dismissal Ord., ECF No. 5 (settling for payment of $1,000 to debtor for alleged willful violation of stay arising from purported transmission of two collection letters)); *Smith v. Peoples Fed.*, Adv. Pro. No. 02-80054-JW (Consent Dismissal Ord., ECF No. 8 (settling for payment of $500 to debtor for alleged willful violation of stay arising from purported transmission of one collection letter)); *Ayersman v. World Omni Financial Corp*., Adv. Pro. No. 02-80049-JW  (Consent Dismissal Ord., ECF No. 17 (settling for payment of $1,250 to debtor for alleged willful violation of stay arising from two purported collection calls).

C/A No. 04–15104–W, Adv. Pro. No. 05–80032–W, slip op. (awarding $2,350.00 in attorney's fees).[36]

Together, David Breen and Matthew Breen retained $1600 in attorney's fees from the settlement for the Beach Anesthesia Adversary; $6,000 from the settlement for both Carolina Regional Adversaries, and $8,000 from the settlement for the McLeod Adversary, for a total of $15,600 from the Adversary Proceedings.  The Court finds that attorney's fees paid to David Breen and Matthew Breen in connection with the Adversary Proceedings exceeds the customary fee awarded in similar cases with similar facts, particularly since there was no extensive discovery and no trials or damage hearings were conducted. Further, the defendant-creditors' alleged conduct did not appear egregious in any of the Adversary Proceedings.

8.  <u>The attorney's expectation at the outset of the litigation</u>

David Breen's and Matthew Breen's expectation at the outset of the litigation was presumably to stop the defendants' post petition collection attempts against Debtor-Plaintiff. While § 362(k) allows the filing of a Complaint, the Court observes from its records and knowledge of the litigation practices of the local bankruptcy bar that the most common practice of the debtors' bar in this district is to contact creditors who have violated the stay to warn of consequences of a stay violation without filing a lawsuit.

---

[36]    Fees more than $5,000 have been awarded in a few cases, but only in circumstances where the creditor engaged in egregious or threatening conduct in violation of the automatic stay or the matters were heavily litigated. *In re Banks,* 612 B.R. 167 (Bankr. D.S.C. 2020) (awarding attorney's fees of $12,000 for willful violation of the automatic stay following default judgment where creditor refused to return debtor's vehicle and two separate damage hearings were required due to the parties' inability to reach a settlement); *In re Warren,* 532 B.R. 655, 665 (Bankr. D.S.C. 2015) (awarding $8,200 in attorney's fees after trial in an adversary proceeding that was pending for more than 6 months and included motions practice and discovery); *Young v. Elite Fin. Servs. (In re Young)*, C/A No. 04–10260, Adv. Pro. No. 04–80353, slip op. (Bankr.D.S.C. Sept. 15, 2005) (awarding $9,027.00 in attorney's fees in a matter that was "vigorously litigated" by a sophisticated creditor). The circumstances justifying a larger fee award are not present in these Adversary Proceedings.

9.  The time limitations imposed by the client or circumstances

Neither David Breen nor Matthew Breen has asserted or presented evidence showing that there were any time limitations imposed by the Debtor-Plaintiff or that circumstances compelled higher than average fees in connection with any Adversary Proceedings.

10. The experience, reputation, and ability of the attorney

David Breen more than 30 years of experience practicing bankruptcy in this district and has filed more than one hundred actions for willful violation of the automatic stay—far exceeding the number of such filings by similarly situated debtors' counsel.  There is nothing in Matthew Breen's more limited history with the Court justifying any escalated fees for his services in the Adversary Proceedings.

11. The undesirability of the case within the legal community in which the suit arose

There is no evidence indicating that the issues involved in the Adversary Proceedings are undesirable within the bankruptcy bar of the District of South Carolina.

12. The nature and length of the professional relationship between the attorney and his or her client

The evidence indicates that David Breen's and Matthew Breen's length of relationship with the Debtor-Plaintiff is limited to the course of this chapter 13 case, with the Adversary Proceedings being filed either in the early stages of the bankruptcy case or shortly after confirmation of the plan.

Despite having been notified in detail of the Court's concerns regarding the attorney's fees related to the Adversary Proceedings and provided with an opportunity at a further hearing to satisfy their burden of proof, David Breen and Matthew Breen failed to address those concerns at that hearing. David Breen's and Matthew Breen's failure to present sufficient evidence and argument supporting their attorney fees constitutes grounds to disallow the entire amount of the

36

claimed fee, as David Breen and Matthew Breen bear the burden of proof. *See In re Smith,* 624 B.R. at 799 (ordering that counsel's fee application would be denied upon her failure to submit revised time records to meet her burden of demonstrating the reasonableness of the requested fees and expenses). Nevertheless, the Court finds that a reduced fee is appropriate.

Based on the foregoing, the Court finds that the compensation retained and shared by David Breen and Matthew Breen for their services regarding the Adversary Proceedings was not reasonable and should be reduced by 50% for David Breen and by 50% for Matthew Breen.

## CONCLUSION

For the reasons stated above, the Court finds that the compensation retained and shared by David Breen and Matthew Breen is subject to reduction because the fees shared with Matthew Breen were in direct violation of 11 U.S.C. § 504 in addition to being unsupported by a written representation agreement with the Debtor-Plaintiff in violation of 11 U.S.C. § 528. Additionally, the compensation agreements and fees that David Breen and Matthew Breen retained and shared were not timely disclosed as required by Fed. R. Bankr. P. 2016(b). The Court further finds that David Breen and Matthew Breen have failed to meet their burden of showing that the compensation received in the amount of $15,600 from the settlements of the Adversary Proceeding was reasonable. While these determinations could provide for a full fee disgorgement from both David Breen and Matthew Breen,[37] in its discretion, the Court orders a 50% disgorgement of the

---

[37] In this matter, the Court takes into consideration that Matthew Breen is a young attorney who does not specialize solely in bankruptcy law, that the failure to disclose does not appear to have been a deliberate attempt to deceive the Court and that in recent years, the Covid-19 pandemic has placed increased strains on consumer debtor practice and likely lowered counsel's historic income, which may limit their ability to disgorge fees. To be clear, these are not sufficient legal excuses for counsel's practices and failures to disclose, merely factors the Court has considered. Furthermore, the Court is aware that David Breen and Matthew Breen have been ordered to pay a sanction in *Defeo v. Winyah Surgical Specialists, P.A. (In re Defeo),* C/A No. 20-03738, Adv. Pro. No. 21-80011, slip op. (Bankr. D.S.C. Sept. 27, 2021).

amount paid from each based upon the condition that the payments are made within 14 days of this order or within such extended time as this Court may order. [38]

   Accordingly, it is hereby

ORDERED that David Breen shall disgorge compensation from the settlement proceeds to the Defendants in the Adversary proceedings as follows:

- $400 to Beach Anesthesia LLC c/o Daniel Reynolds, Esq., McCarthy, Reynolds & Penn, LLC, 1517 Laurel Street, Columbia, South Carolina 29201;

- $1,500 to Carolina Regional Ltd. c/o Sam Alberts, Esq., Dentons, 1900 K Street NW, Washington, D.C. 20006; and

- $2,000 to McLeod Loris Seacoast Hospital c/o Reid Dyer, Esq., Moore & Van Allen, PLLC, 78 Wentworth Street, Charleston, South Carolina, 29401.

IT IS FURTHER ORDERED that Matthew Breen shall disgorge compensation from the settlement proceeds to the defendants in the Adversary proceedings as follows:

- $400 to Beach Anesthesia LLC c/o Daniel Reynolds, Esq., McCarthy, Reynolds & Penn, LLC, 1517 Laurel Street, Columbia, South Carolina 29201;

- $1,500 to Carolina Regional Ltd. c/o Sam Alberts, Esq., Dentons, 1900 K Street NW, Washington, D.C. 20006; and

- $2,000 to McLeod Loris Seacoast Hospital c/o Reid Dyer, Esq., Moore & Van Allen, PLLC, 78 Wentworth Street, Charleston, South Carolina, 29401.

David Breen and Matthew Breen are hereby **ORDERED** to pay the designated amounts within 14 days from the entry of this Order, or within such time as extended by the Court upon their request.[39] A copy of this Order must be included with the transmittal of each payment. David

---

[38]    The Court would likely liberally consider an extension if counsel intends in good faith to make the payments ordered.  However, Counsel's failure to timely pay in good faith may provide grounds for reconsideration and restoration of disgorgement of the full amount received.

[39]    In making its determination that the disgorged amounts should be paid to the Defendants under 11 U.S.C. § 329(b)(2), the Court has determined that no further payments should be paid to Debtors.  The Court is satisfied that Debtor-Plaintiff received a full and adequate remedy from the payments previously received through the settlement of the Adversary Proceedings.

Breen and Matthew Breen shall each file an affidavit within two days after payment attesting that

they have timely complied with the requirements of this Order.[40] If any of the Defendants fail to

accept or negotiate the payments made by David Breen or Matthew Breen within 30 days after the

date the payment was mailed, the Court should be notified by the filing of a report by the affected

counsel.

       **AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**10/26/2021**



US Bankruptcy Judge
District of South Carolina

Entered: 10/26/2021

---

[40]     In recognition of Counsel's purported financial limitations, the Court notes that it has suspended at this time a further review of compensation and disclosure thereof in seven other adversary proceedings in which the Court suspects further disgorgements could be entered.